**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

September 8, 2015

LETTER TO COUNSEL

RE:   *Delford Benjamin Scott v. Commissioner, Social Security Administration*;
      Civil No. SAG-14-2769

Dear Counsel:

On August 29, 2014, Plaintiff Delford Benjamin Scott petitioned this Court to review the Social Security Administration's final decision to deny his claim for Disability Insurance Benefits. (ECF No. 1). I have considered the parties' cross-motions for summary judgment and Plaintiff's reply memorandum. (ECF Nos. 16, 17, 18). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2014). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both parties' motions and remand the case to the Commissioner for further consideration. This letter explains my rationale.

Mr. Scott applied for Disability Insurance Benefits on August 22, 2011. (Tr. 185-91). He alleged a disability onset date of December 15, 2010.[1] (Tr. 13). His claims were denied initially and on reconsideration. (Tr. 64-67, 72-78). A hearing was held on June 10, 2013, before an Administrative Law Judge ("ALJ"). (Tr. 27-53). Following the hearing, the ALJ determined that Mr. Scott was not disabled within the meaning of the Social Security Act before April 6, 2013, but became disabled as of that date. (Tr. 9-26). The Appeals Council denied Mr. Scott's request for review, (Tr. 1-5), so the ALJ's decision constitutes the final, reviewable decision of the Agency.

The ALJ found that Mr. Scott suffered from the severe impairments of peripheral neuropathy, recurrent metatarsalgia, and skin lesions. (Tr. 15). Despite these impairments, the ALJ determined that, prior to April 6, 2013, Mr. Scott retained the residual functional capacity ("RFC") to:

> perform medium work as defined in 20 CFR 404.1567(c) except he can stand no more than four hours in an eight-hour workday; no climbing of ladders, ropes or scaffolds; occasional climbing of ramps or stairs; occasional stooping and

---

[1] At the hearing, Mr. Scott's counsel expressed some willingness to amend the onset date to June 3, 2011, but no formal amendment was made. (Tr. 52-53).

    crouching; frequent kneeling; no crawling; no exposure to unprotected heights and heavy machinery.

(Tr. 17). As of April 6, 2013, the ALJ found that Mr. Scott would have the additional limitation of being "off task 20 percent of an eight-hour workday," which would be work-preclusive. (Tr. 19). After considering the testimony of a vocational expert ("VE"), the ALJ determined that prior to April 6, 2013, Mr. Scott could perform jobs existing in significant numbers in the national economy and that, therefore, he was not disabled. (Tr. 21).

  Mr. Scott raises two arguments on appeal: (1) that the ALJ misread the opinion of treating physician Dr. Gannon in determining an onset date of April 6, 2013; (2) that the ALJ made an erroneous credibility assessment; and (3) that the ALJ did not properly assess whether Mr. Scott met or equaled Listing 8.00. While I do not agree with the Listing argument, I concur that the ALJ did not properly evaluate the onset date, which includes a credibility assessment. Accordingly, remand is appropriate. In so holding, I express no opinion as to whether the ALJ's ultimate conclusion that Mr. Scott was not entitled to benefits was correct.

  Beginning with the unsuccessful argument, Mr. Scott contends that the ALJ erred in assessing Listing 8.00, and contests the ALJ's finding that Mr. Scott's "lesions do not limit his ability to ambulate in any way, let alone seriously." (Tr. 17). It is clear that the cited statement overstates the evidence of record, which demonstrates certain impediments to ambulation. However, there is no independent "Listing 8.00," and the evidence does not indicate that any of the other relevant listings were met. Listing 8.00 simply provides the definitions to be used in the evaluation of the other listings under the heading of "skin disorders." The primary issue raised by Mr. Scott is the fact that "extensive skin lesions" is defined, in relevant part, as those "that very seriously limit your ability to ambulate." Listing 8.00. However, the evidence cited by the ALJ provides substantial evidence for an assessment that Mr. Scott had no such "very serious" limitation. It is clear that he had persistent lesions for which he underwent treatment, but the overall effect on his ambulation is less clear from the medical record. Mr. Scott contests the ALJ's reliance on "a single snapshot of Plaintiff's gait," Pl. Mot. 36, while simultaneously citing to the sole record noting an antalgic gait, Pl. Mot. 37. Ultimately, while there is some medical evidence to support a conclusion on both sides, I find no error warranting remand in the ALJ's listing analysis.

  However, I concur with Mr. Scott that the ALJ did not support his selection of the April 6, 2013 onset date with substantial evidence. In this case, the only change in the evidence on April 6, 2013 was an opinion written by Dr. Gannon on that date (in addition to an opinion written by Dr. Gannon the previous day, April 5, 2013). Mr. Scott did not testify that he experienced any material change in his symptoms on or around that date. Apparently in reliance on Dr. Gannon's opinion, then, the ALJ determined that, as of April 6, 2013, Mr. Scott would be "off task 20 percent of an eight-hour day." (Tr. 19). The ALJ readily acknowledged, however, that "Dr. Gannon did not make any statement regarding the onset of these alleged limitations." (Tr. 19).

*Delford Benjamin Scott v. Commissioner, Social Security Administration*
Civil No. SAG-14-2769
September 8, 2015
Page 3

  Where an onset date is ambiguous, an ALJ is required to consult a medical advisor to determine the appropriate date. *See* SSR No. 83-20; *Bailey v. Chater*, 68 F.3d 75, 79 (4th Cir. 1995). The ALJ did not do that in this case, and did not re-contact Dr. Gannon to obtain clarification as to his view of the onset date. Dr. Gannon's April 5, 2013 opinion notes that he has been treating Mr. Scott for two years and refers to "chronic foot pain" and "recurrent painful skin lesions." (Tr. 385). He further suggests that Mr. Scott's pain is "frequently" severe enough to interfere with attention and concentration, which would appear to be the premise for the suggestion that Mr. Scott would be "off task." (Tr. 386). Dr. Gannon concluded that Mr. Scott "should have sedentary job activity." (Tr. 387). On April 6, 2013, the next day, Dr. Gannon completed an additional form in which he suggested that, "This evaluation reflects the period beginning 4-6-13." (Tr. 388). In that form, he again stated that Mr. Scott "would benefit from more sedentary job position . . . [due to] recurrent painful skin lesions feet." (Tr. 389). There are no treatment notes suggesting that Dr. Gannon saw Mr. Scott on either April 5, 2013 or April 6, 2013. Earlier notes from Mr. Scott's appointments with Dr. Gannon show relatively consistent symptoms throughout the treatment period. (Tr. 272-86, 324-33).

  Ultimately, no evidence supports a conclusion that Dr. Gannon believed Mr. Scott to have a changed functional capacity on April 5, 2013, or April 6, 2013, particularly in light of the apparent lack of any physical examination on those dates. Thus, the only reasonable conclusion is that Dr. Gannon believed his opinion as to Mr. Scott's functional capacity to date from some earlier period in his two-year treatment relationship. The ALJ was required to seek clarification, then, either by re-contacting Dr. Gannon to assess the onset date with more precision or by consulting a medical advisor to resolve the ambiguity. Once the onset date is established by substantial evidence, the ALJ should re-consider the currently unsupported conclusion that Mr. Scott's credibility improved as of April 6, 2013. The factors originally cited as undermining Mr. Scott's credibility (such as his failure to report walking limitations to his treating doctor and his inconsistent compliance with diabetes treatment) do not appear to have changed on that date.

  For the reasons set forth herein, Mr. Scott's Motion for Summary Judgment (ECF No. 16) is DENIED and Defendant's Motion for Summary Judgment (ECF No. 17) is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's judgment is REVERSED IN PART due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The Clerk is directed to CLOSE this case.

  Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

            Sincerely yours,

            /s/

            Stephanie A. Gallagher
            United States Magistrate Judge